WESTCHESTER COUNTY.—HON. OWEN T. COFFIN, SURROGATE.—February, 1887.

## MATTER OF JONES.

*In the matter of the estate of* JAMES JONES, *deceased.*

Under L. 1885, ch. 483, entitled "an act to tax gifts, legacies and collateral inheritances in certain cases," it is only necessary to appoint an appraiser where specific legacies, subject to tax, are given, or where taxable inheritances exist, or estates in fee are devised, or remainders, annuities, life estates, or terms of years are created.

The phrase, "lineal descendants," in the exemption clause of § 1, includes only those of the decedent.

The requirement of § 13, that an appraiser be appointed "to fix the value of property *of persons whose estates* shall be subject to the payment of said tax," has reference to the *estates of persons taking,* as legatees or otherwise, and not to the estate of the decedent.

Testator, who died leaving real and personal property, by his will directed the former to be sold, and disposed of the entire estate, in general legacies, without remainders, to descendants of deceased brothers and sisters, and to strangers in blood. The district attorney having applied (1) for the appointment of an appraiser to fix the value of the estate, and (2) for a citation, to all persons interested, to show cause why the tax imposed by L. 1885, ch. 483, should not be paid,—

*Held,* (1) that no appraisal was required; (2) that the issue of the citation asked for was not provided for by the statute; and (3) that each application should be denied.

*It seems,* that the only mode which the Surrogate can employ, to enforce the liability of an executor or administrator to pay the tax imposed by the act in question, is to refuse to allow him credit, on his accounting, for the amount of such liability, unless he produce the voucher therein mentioned.

THE will of James Jones was admitted to probate in November, 1885. His estate consisted of personal property of the value of about $50,000, and real property estimated to be worth $20,000, which he directed to be sold. He left no widow or children, nor the descendants of a child surviving him. The property, thus consisting wholly of legal assets, was given in various sums to the children of deceased brothers and sisters and their issue, and to family servants. Application was made for the appointment of an appraiser to fix the value of the estate, with a view to the collection of the legacy tax, and the district attorney petitioned for a citation directing all persons interested to appear and show cause why such tax should not be paid.

D. VERPLANCK, *for District Attorney, for the applications.*

THE SURROGATE.—Chapter 483 of theLaws of 1885 is of so recent enactment that there have been but few decisions authoritatively construing its various provisions. Its constitutionality has lately been determined by the Court of Appeals, and it now remains for the courts and officials to carry it into effect.

It seems that, by the first section, all property or the income thereof, given by will to corporations or persons other than " to or for the use of father, mother,

husband, wife, children, brother, and sister, and lineal descendants born in lawful wedlock, and the wife or widow of a son and the husband of a daughter, and the societies, corporations and institutions now exempted by law from taxation," shall be subject to a tax of five per cent. on the clear market value of such property. The phrase "lineal descendants" would seem to include only those who were lineal descendants of the testator or intestate, as appears more especially when read in connection with the next section, which provides, in substance, that when an interest for life shall be devised or bequeathed to a father, mother, husband, wife, children, brother and sister, the widow of a son, or a lineal descendant, with remainder to a collateral heir of the decedent, or to a stranger in blood, etc., the value of the life estate shall be deducted from the fair value thereof, as appraised, at the time of the death of the decedent, and the remainder shall be subject to tax.

Section 3 makes legacies to executors or trustees in lieu of commissions, where the amount exceeds legal commissions, and would otherwise be taxable, subject to the tax on such excess. By section 6, it is made the duty of the administrator, executor or trustee to deduct the tax from a distributive share or legacy, or, if the legacy or property be not money, he shall collect the tax on the appraised value thereof from the legatee or person entitled to such property, and if in money for a limited period he shall retain the tax upon the whole amount. Then follow other provisions of the act, which it is not now necessary to consider, until we come to § 13, which directs that

the value of property of persons whose estates shall be subject to the payment of the tax, shall be fixed by some competent person as appraiser, to be appointed by the Surrogate, as often and whenever occasion may require, who shall proceed, as therein directed, to make such appraisal. He shall make a report in writing to the Surrogate of the value so fixed, together with such other facts as the Surrogate may require, who shall therefrom "forthwith assess and fix the then cash value of all estates, annuities and life estates or terms of years growing out of said estate, and the tax to which the same is liable, and shall immediately give notice," etc.

One question raised here, if pertinent, relates to the duty of the appraiser. The bulk of this estate is, as it appears, money or its equivalent. The whole is given away in legacies. The value of the money left by the testator cannot be the subject of appraisal, nor can the legacies, but only the estates, etc., if any, which are taxable. Some misapprehension seems to exist as to the range of the duties of the appraiser in fixing "the value of property of persons whose estates shall be subject to the payment of said tax." It appears to be generally assumed that the word "estates" means estates of decedents. This view is erroneous. The word "persons" preceding "whose estates," according to lexicographers, applies only to the living, and the statute clearly should be construed to mean "persons whose estates are inherited or are created by will shall be subject to the payment of the tax." Of course, in making the appraisal, the duty of the appraiser is confined

to fixing and reporting the value of any articles specifically bequeathed, as seems to be implied by § 6, if ordered by the Surrogate, and of the annuities, life estates, etc., which are taxable. Then the Surrogate shall assess and fix the then cash value thereof, and the tax to which the same are liable. The words " the same," doubtless, refer to life estates, annuities, etc. It will be observed that nothing is here said about fixing any value on legacies in money or in specie and the tax thereon. The tax on them and the collection thereof is sufficiently provided for by § 6, which directs the executor, administrator or trustee to deduct the tax from the share or legacy, and to collect the tax on the appraised value of the specific legacy before delivery. If, however, life estates in money or land are given to any of the persons exempt from the tax, with remainder over to any of the persons not exempt, then the appraiser will also be directed to report the value of such remainders, in order that the Surrogate may be enabled to fix the tax thereon. But as by the will, in this case, no such estates are created, and legacies in money only are given, and as the inventory abundantly shows that the estate far exceeds $500 in value, there is no occasion for the appointment of an appraiser. The will directed the sale of testator's real estate, and therefore operated an equitable conversion of it into personalty, at the moment of his death. Hence, the whole of the estate is to be regarded as of that character, and the executors must retain the tax, as fixed by the act, out of the amount of each legacy, but an executor, etc., shall not, by § 8, be en-

titled to credit in his accounts nor be discharged from his liability for such tax, unless he produces a proper voucher for the same from the county treasurer, sealed and countersigned by the State comptroller. If he shall fail to pay the tax on a money legacy, the remedy is by appropriate proceedings against him, if any be provided.

As an illustration of what would result from a construction which would require the whole estate of a decedent, any part of which is subject to the tax, to be appraised, let us suppose that a testator leaves an estate valued at $200,000, consisting of real estate, a store of goods, money, bonds and mortgages, government bonds, etc., the whole of which is devised and bequeathed to his widow and children, except a legacy of $100 to a servant, which is subject to the tax, then the whole estate would have to be appraised, in order to reach the five dollars tax on the legacy. The legislature could not have intended any such absurdity.

It is, therefore, only necessary to appoint an appraiser where specific legacies, subject to tax, are given, or where taxable inheritances exist, or estates in fee are devised, or remainders, annuities, life estates, or terms of years, are created; and it would seem that it is only in such cases, or some of them, that the county treasurer, under § 17, may notify the district attorney, who is required by § 16 to apply for the citation to those interested in the property and take the proceeding therein provided. And it is likewise only in such cases that the decree made may be docketed against the "persons interested in the property liable to tax." In short, it seems that

neither the Surrogate nor the appraiser has any-
thing to do with the tax upon taxable money legacies
or distributive shares, except perhaps that the former
may, to a limited extent, coerce payment thereof by
the executor or administrator.   In the latter case, the
liability to pay the tax is imposed upon the legal
representative; in the former upon the life tenant,
remainderman, etc.   The only method provided by
the act that I can discover which the Surrogate may.
employ to enforce the liability to pay, imposed upon
the former, is to refuse to allow him credit on his ac-
counting for the amount of such liability unless he
produce the voucher required by the act.   His liabil-
ity will continue, but no provision seems to have been
made as to how payment shall be enforced by these
courts.   He is not within the purview of §§16 and 17,
as they relate and apply solely to the persons inter-
ested in the property liable to the tax.   If he, as
frequently occurs, settle with the legatees who are all
of age, and retain the amount of the tax in his hands,
take releases and render no account, the county
treasurer is empowered by § 21 to "collect" that
as well as all other taxes.   Of course, there being
an obligation imposed on the executor or adminis-
trator to pay him, he. may resort to any court of
law to enforce payment.   Briefly then, he must col-
lect the tax on legacies and distributive shares from
them, while on estates inherited or created by will,
from the owners thereof, and in the latter case by
proceedings provided for in §§ 16 and 17, or other-
wise as he may be advised.   It results, from the views
expressed, that both applications should be denied.